## Croasdale *v.* Von Boyneburgk.

*Ships and shipping—Partnership—Joint ownership.*

The mere joint ownership in a vessel does not make the owners thereof partners.

Each of the joint owners of the vessel has the full right to transfer his share, and he may do so by bill of sale.

*Ships and shipping—Joint ownership—Husband and wife.*

A husband owning an interest in a vessel may, for an adequate money consideration paid to him by his wife, transfer his interest to his wife, and direct that the person holding the legal title shall execute a bill of sale of the interest to the wife.

*Ships and shipping—Transfer of interest—Consideration.*

The fact that the value of an interest in a vessel is eight or nine times greater than the purchase price of the interest, will not invalidate the sale, if it appears that the vendor was in urgent need of money and offered the interest at the price named, and that the vendee had no knowledge whatever of the value of the interest which he was buying.

Argued March 20, 1900. Appeal, No. 445, Jan. T., 1899, by defendants, from decree of C. P. No. 3, Phila. Co., Dec. T., 1898, No. 923, on bill in equity, in case of Olney C. Croasdale v. F. Albert Von Boyneburgk, John Reese, William F. Reese, John H. Baizley and William Grupp. Before GREEN, C. J., DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Bill in equity for an account.

The facts appear by the opinion of McCARTHY, J., which was as follows:

### FINDINGS OF FACTS.

1. In 1884, the steam tug John Reese was built and in May of that year was launched and went into service. She was built

to engage in the business of towing vessels, and has been exclusively employed in that business in the Delaware river and bay since she was launched. The original owners of the boat were John H. Baizley, John Reese, William F. Reese, William G. Reynolds, E. W. Stotsenberg and F. A. Von Boyneburgk. William Grubb was the original master of the tug from the time she took out her first papers, and has continued in that capacity to the present time. On April 30, 1898, he also became a part owner by the purchase of one-thirty-second interest in the boat. E. W. Stotsenberg was originally chosen by the owners as agent or managing owner, and continued in that capacity until Von Boyneburgk was elected general manager in his place. The vessel has always been employed for the joint account of the owners. The captain and crew are paid monthly wages. The owners find all the supplies and make all the repairs on joint account. There is no special agreement between the owners as to the way in which the boat shall be run. The managing owner has the control and direction of the tug, makes contracts for her employment, collects all the money that the tug earns, pays any bills that are to be paid, and it is his business to account to the joint owners for any balance of moneys in his hands in accordance with their proportionate interests.

2. The extent of the interest of Stotsenberg in the tugboat was eleven thirty-seconds of the whole. The title to this interest did not appear in his name, but Reynolds appeared as the owner of twelve thirty-seconds of the vessel. Reynolds was the actual owner in his own right of one thirty-second only. On May 15, 1894, which was about the time she went into service, Reynolds executed a bill of sale to Stotsenberg for the eleven thirty-seconds of the said tugboat. This paper was not recorded, nor was it delivered, but Reynolds continued to hold it, at the request of Stotsenberg.

3. Clara K. Stotsenberg was the wife of the said E. W. Stotsenberg. On or about April 10, 1894, she received $1,000 as a gift from her mother. A week or two after the receipt of this money, at the request of her husband, she gave him this money " to put it in the Reese," Stotsenberg saying to his wife that he would give her all his interest in the boat for that sum. No bill of sale was made to Mrs. Stotsenberg at the time of this

transaction. Afterward she requested that the title might be put in her name. On July 8, 1897, at the request of Stotsenberg, made a week or ten days previous, Reynolds executed a bill of sale to Clara K. Stotsenberg and delivered the same to the notary public, who took his acknowledgment thereto. He received no consideration for this bill of sale from Mrs. Stotsenberg. This bill of sale was handed, whether by Reynolds or by the notary is not clear, to Stotsenberg, who delivered it to Mrs. Stotsenberg at the custom house on or about July 10, 1897, and thereafter Mrs. Stotsenberg retained it in her own custody.

4. Mrs. Stotsenberg was also the legal owner of another tug boat named the Mary Louise. The only way she had of making a living at the close of the year 1898 was through the earnings of the Mary Louise. In December, 1898, the Mary Louise was attached by the United States marshal upon a claim for negligent towage. Mrs. Stotsenberg employed Francis C. Adler, Esq., a member of the bar, to represent her in the matter of this claim, and Mr. Adler succeeded in making arrangements by which the claim could be settled by a payment of $500. Mrs. Stotsenberg, being unable to borrow the money, appealed to Mr. Adler to find a purchaser for her interest in the John Reese. She made this request to Mr. Adler in his office, where she had gone in company with her husband, on December 19, 1898. Mr. Adler telephoned to the plaintiff, who was a personal friend of his, with whom he had been acquainted for fifteen years, and stated that a party had part of a tugboat for sale and wanted $500 for it, and asked the plaintiff if he wanted to make an investment. The plaintiff telephoned in reply that he did and would come at once to Mr. Adler's office.

5. Olney Croasdale, the plaintiff, is a traveling salesman in the employ of the Pioneer Suspender Company under a salary. He spends most of his time away from Philadelphia traveling, being at home only about three days per month. Prior to the transaction about to be described the plaintiff had never met Clara K. Stotsenberg, and had no knowledge of her in any way. He had never seen the John Reese; he had heard of the boat by name, but had no other knowledge of it. He had never owned any other tugboat.

6. On December 19, 1898, the plaintiff, immediately after

receiving the inquiry and making the reply set out in the fourth finding of fact, supra, proceeded to Mr. Adler's office, where he found Mr. Adler, Mr. Stotsenberg and Mrs. Stotsenberg awaiting him, and a bill of sale was then and there executed and delivered by Clara K. Stotsenberg to Olney Croasdale, the plaintiff, for eleven thirty-seconds of the steam tug called the John Reese, together with all earnings or dividends upon the said share or interest, accrued or to accrue, and the appurtenances thereto belonging. The plaintiff paid to Mrs. Stotsenberg as the consideration for his purchase the sum of $500, by his check, drawn to the order of Clara K. Stotsenberg, dated December 19, 1898, for that amount. This check was indorsed by Clara K. Stotsenberg and handed by her to her attorney, Mr. Adler, who deposited it, and, by her direction employed the moneys in paying the claims against the tug Mary Louise and having the same released from the attachment of the marshal.

7. The negotiation resulting in the sale by Mrs. Stotsenberg to Mr. Croasdale took place between the said parties directly, and appears to have been very brief. The actual value of the interest in the boat sold by Mrs. Stotsenberg was not less than $3,300. There were accumulated dividends upon the said interest amounting to from $1,000 to $1,300 in addition, which Mrs. Stotsenberg also sold to the plaintiff in this transaction. Mrs. Stotsenberg was aware of the values which she was selling for $500, but was in need of money, and, in her own words, "was glad to get that." The plaintiff, however, made no inquiry as to the value of the interest he was purchasing or of the amount of dividends accrued thereon, and he was not informed as to that value or that amount by any of those present at the interview, nor did he have that information from any other source. From his general knowledge, to use his own language, he considered that "it was a very poor tugboat that was not worth $500, and I was willing to risk it." He was not informed that the boat was concerned in any litigation or that there was any trouble or difference between the owners of it or that there was any doubt or question concerning the title of Mrs. Stotsenberg to the interest she was selling, and he made no inquiry as to such matters. He bought the interest as an investment. Mrs. Stotsenberg offered to sell at a stated price; Mr. Croasdale accepted the offer at that price, and thereupon

the bargain and sale was consummated without any restrictions or reservations or subsidiary agreements or understandings of any kind on the part of either buyer or seller.

8. The defendant, Von Boyneburgk, became managing owner of the John Reese about August 17, 1897. He has since transacted the business for the owners jointly and has received the earnings of the vessel. Since the plaintiff became one of the owners, on December 19, 1898, he has not received from the said managing owner any account nor has any payment been made to him for the earnings or dividends upon his share of the boat.

### FINDINGS OF LAW.

1. The interest of the part owners, for whom the John Reese was built, was that of tenants in common of a personal chattel. There was no other relation between them than that arising from their joint ownership, and that did not make them partners. This, which Chief Justice GIBSON, in Hopkins v. Forsyth, 14 Pa. 34, calls a "hornbook principle," is the settled law of Pennsylvania: Knox v. Campbell, 1 Pa. 366; Campbell v. Steele, 11 Pa. 394; Coursin's Appeal, 79 Pa. 220; Adams v. Carroll, 85 Pa. 209.

2. Each of the said joint owners had full right to transfer his share in the John Reese at his pleasure: Jaggers v. Binnings, 1 Stark, 64.

Such transfer could be made by bill of sale, if upon valuable consideration, the transfer being bona fide: Hozey v. Buchanan, 16 Peters, 215.

3. The transfer by E. W. Stotsenberg, to his wife Clara K. Stotensberg of all his interest in the John Reese, was a bona fide transfer by bill of sale upon a valuable consideration, and passed to Mrs. Stotsenberg the ownership, as a tenant in common with the other owners, of eleven thirty-seconds of the John Reese. The uncontradicted evidence is that Mrs. Stotsenberg paid her husband $1,000 in cash before the boat was launched, and that in consideration therefor he sold her all his interest in the boat. She thereupon became the equitable owner of that interest, and when subsequently the holder of the legal title, Reynolds, at the request of Mr. Stotsenberg, executed the bill of sale, dated July 8, 1897, to Clara K.

Stotsenberg, and the same was subsequently delivered to her, her title thereto, both legal and equitable, became complete.

4. The joint owners of the John Reese were not partners in respect to the earnings of the boat. They are entitled to the earnings or dividends upon their respective shares as joint owners and not as partners. " When no other relation exists between the shareholders of a steamboat than that which arises from the joint ownership, they are not partners, nor is their liability measured by the rules of law which are peculiar to the partnership relation: Hopkins v. Forsyth, 14 Pa. 34. It is true they may become partners in a trade or business in which the boat is employed, but, when it is claimed that such relation exists, it must be averred and proved by competent testimony. It cannot be inferred from the joint ownership alone : " Adams v. Carroll, 85 Pa. 209.

No one would suppose that a joint owner of a wagon and team might not sell his moiety before the debts were got in and the expenses paid, or that joint creditors would have a preference in respect to it, over separate creditors. Carriers may doubtless become partners, but not merely by becoming joint owners of a chattel and using it for a common purpose. And the principle is peculiarly applicable to ships or other craft, the exceptions to it in respect to them being always founded in very special circumstances: Hopkins v. Forsyth, 14 Pa. 34.

An agreement to sail a vessel on shares does not create a partnership : Henry, Admiralty, Jurisdiction and Procedure, p. 67.

5. On December 19, 1898, Olney Croasdale, the plaintiff, became the owner by purchase from Clara K. Stotsenberg of eleven thirty-seconds of the John Reese as a tenant in common with the other part owners of the boat. He also became the owner of the earnings or dividends accrued on the said share at the time of his said purchase. This transfer was made by bill of sale for a valuable consideration. It was a bona fide transaction of purchase and sale and vested in the plaintiff a valid and complete title. The effort of the defendants to attack the bona fides of the transaction completely failed. It was argued, however, that because of the inadequacy of the price, the plaintiff was put upon inquiry, which would have developed facts tending to show that Mrs. Stotsenberg was not the

bona fide owner of the interest she professed to own. While it is true that the value of the interest and accrued dividends purchased by plaintiff for $500 was probably eight or nine times greater than that amount, the evidence does not disclose that the plaintiff was aware of this. He seems to have had only a vague general knowledge of the value of such vessels, from which he believed that he was making a good bargain. Mere inadequacy of price cannot affect the good faith of a purchase, because it is a matter of common knowledge that stress of circumstances frequently obliges the owners of property to dispose of it at all hazards, and that was the very case in the transaction under consideration. Mrs. Stotsenberg had had her only means of livelihood arrested by the attachment of the Mary Louise, and as she herself testified, she was glad to sell her interest in the John Reese for $500, notwithstanding that its value was largely in excess of that amount. There is nothing in this phase of the transaction which affects its bona fides, and there is no other fact attending it which casts upon it the shadow of a doubt. Even had the plaintiff been put upon inquiry, however, that would only have disclosed what has already been found, namely, that Clara K. Stotsenberg was the bona fide owner of the interest and had a perfect right to convey the same and the accumulated dividends upon it, and that the other part owners being merely owners and not partners, had no right or lien in any wise affecting the same.

6. The plaintiff, as part owner of the John Reese, is entitled to an account from the managing owner. That the owners are so entitled is admitted by the answers of the defendants and is also testified to in defendants' proofs. It follows that the plaintiff is entitled to the relief prayed for by his bill.

In conclusion upon the whole case, I am of opinion that the defendant, F. Albert Von Boyneburgk, as the managing owner and agent of the tugboat John Reese should be directed to account to the plaintiff as owner of eleven thirty-seconds of the said tugboat John Reese for all the earnings of the said boat from August 17, 1897, to the present time, and for the due and proper application of the said earnings by him as managing owner and agent as aforesaid, and that the cause should be referred to a master to state such account for the information of the court.

*Error assigned* was the decree for an accounting.

*Thomas Diehl*, with him *J. Warren Coulston*, for appellant.
—An interest in a vessel is of a twofold character. There
may be an ownership in the vessel itself, or a portion of it, and
in addition to this ownership there is an ownership in the re-
sulting profits arising from the use of the vessel. The bill in
this case deals with the latter character of interest only: Hozey
v. Buchanan, 16 Peters, 215; 3 Kent's Commentaries, 51;
Mumford v. Nicoll, 20 Johns. (N. Y.) 611; Harding v. Fox-
croft, 6 Greenleaf (Me.), 76; Lindsay v. Gibbs, 28 Law Jour.
Ch. 692.

It is submitted respectfully that the learned court below
erred in not deciding that as respects the earnings of the vessel
which had accrued in a joint adventure of the owners, a rela-
tion of partnership existed and that the complainant took his
title subject to all equities previously subsisting between such
co-owners: Holderness v. Shackles, 8 Barn. & Cress. 612.

*E. Cooper Shapley*, with him *Edwin C. Nevin*, for appellees.
—It did not lie in the mouth of Von Boyneburgk to dispute
the title of Mrs. Stotsenberg, because as against him the regis-
try was evidence of the facts sworn to by him as far as he was
concerned, it being a record of the United States government
made under the sanctity of an oath: Parsons, Shipping and
Admiralty, 43; Cooper v. South, 4 Taunt. 802; Pirie v. An-
derson, 4 Taunt. 652; Flower v. Young, 3 Camp. 240; Hacker
v. Young, 6 N. H. 95; Ligon v. Orleans Nav. Co., 7 Martin
(La.), 682.

A bona fide purchaser for a valuable consideration, without
notice, is protected, even if he purchased from a fraudulent
grantor: Hood v. Fahnestock, 8 Watts, 489; Heath v. Page,
63 Pa. 108; Reehling v. Byers, 94 Pa. 316; Kichline v. Lo-
bach, 125 Pa. 295.

But there is no evidence that the title of Mrs. Stotsenberg
was fraudulent. Declarations of parties as to what Stotsenberg
said, would not be evidence against her, unless it were shown
that she had knowledge of the alleged fraud: Towar v. Bar-
rington, Brightly, 253; McElfatrick v. Hicks, 21 Pa. 402;
Silliman v. Haas, 151 Pa. 52.

The mere joint ownership in a vessel does not make the owners thereof partners: Hopkins v. Forsyth, 14 Pa. 34; Adams v. Carroll, 85 Pa. 209; Knox v. Campbell, 1 Pa. 366; Campbell v. Steel, 11 Pa. 394; Coursin's App., 79 Pa. 220; McLellan v. Cox, 36 Me. 95.

A partnership relation cannot be presumed: Hopkins v. Forsyth, 14 Pa. 34; Williams v. Sheppard, 13 N. J. L. 76; Knowlton v. Reed, 38 Me. 246; Macy v. DeWolf, 3 Woodb. & Minot (U. S. C. C.), 193; Revens v. Lewis, 2 Paine, 202; Patterson v. Chalmers, 7 B. Monroe (Ky.), 595; Foster v. Pilot No. 2, 1 Newberry's Adm. 215.

PER CURIAM, April 16, 1900:

The decree in this case is affirmed on the findings and opinion of the learned court below.